UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHAEL ROBERT SMITH,

        Petitioner,

v.                                                                          CIVIL CASE NO. 05-40196
                                                                            HONORABLE PAUL V. GADOLA
LINDA METRISH,

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Michael Robert Smith has filed an application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for armed robbery. Having reviewed the pleadings and state court record, the Court concludes that Petitioner's claims have no merit. Accordingly, the habeas petition must be denied.

### I.      Background

Petitioner was charged in Oakland County, Michigan with armed robbery, M.C.L. § 750.529, third-degree fleeing and eluding a police officer, M.C.L. § 750.479a, and failing to stop at the scene of a personal injury accident, M.C.L. § 257.617(a). The charges arose from a robbery at the Mobil Gas Station in Lyon Township on July 17, 2000. Tracie Milkey was working in the gas station at the time. The state court described the incident as follows:

> Defendant approached the clerk at a gas station at about 12:50 a.m. He asked for a pack of Basic cigarettes and gave the clerk a five dollar bill. As the clerk handed defendant his change, he lifted his shirt and showed her a gun that was in the waistband of his pants. Defendant told the clerk to open the register and give him all the money. She could see the handle of the gun sticking out above the waist of his pants and saw a bulge in his pants that was in the form of a gun. The clerk

believed that defendant would shoot her if she did not comply with her request. She gave defendant all the money in the register, including a $10 roll of quarters. The total amount of money given to defendant out of the drawer was $152.14. Defendant took the money and put it into his pants pocket.

The clerk ducked down behind the counter as defendant left, then saw a white Pontiac leave the gas station. She alerted police. Defendant was pursued from the gas station, at I-96 and Kent Lake Road, and stopped by police on eastbound I-696 a[t] Halstead Road. After initially getting out of his car as directed by police, defendant then got back in and sped off. He got off of I-696 at Orchard Lake Road, where he hit a patrol car and injured an officer. Defendant continued to speed away, driving southbound on Orchard Lake Road. He then drove eastbound on Grand River into Detroit. He stopped in a residential neighborhood, still pursued by police, and fled on foot. A police officer caught up to defendant and tackled and handcuffed him.

The police found a wad of bills in defendant's pocket, totaling $141. They found a crack pipe and pack of Basic cigarettes in his underwear and a broken $10 roll of quarters and an unopened pack of Basic cigarettes in his car. The clerk identified defendant immediately during a live line-up.

*People v. Smith*, No. 231975, at 1-2 (Mich. Ct. App. Nov. 9, 2001) (unpublished).

During the subsequent jury trial, Petitioner pleaded guilty to fleeing and eluding a police officer and failing to stop at the scene of an accident. The trial continued on the armed robbery charge. The defense was that Petitioner did not possess a gun or assault the complainant when he took the money. He maintained that, at most, he was guilty of larceny from a person. The jurors were unpersuaded by the defense and, on December 14, 2000, they found Petitioner guilty of armed robbery. The trial court sentenced Petitioner as a habitual offender to imprisonment for eighteen to forty years for the armed robbery, six to twenty years for fleeing and eluding the police, and 169 days for leaving the scene of an accident.

Petitioner appealed his armed robbery conviction as of right. He argued that he was deprived of due process and a fair trial by (1) the trial court's refusal to suppress evidence of his prior convictions and (2) the prosecutor's reference to a courtroom deputy's weapon. The Michigan Court

of Appeals affirmed Petitioner's robbery conviction, *see id.*, and on May 29, 2002, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Smith*, 466 Mich. 870; 645 N.W.2d 663 (2002) (table).

In a motion for relief from judgment filed on May 8, 2003, Petitioner argued that his trial and appellate attorneys were ineffective and that the prosecution withheld exculpatory evidence. The trial court denied Petitioner's motion in a brief order, stating that Petitioner was not deprived of his constitutional rights. The Michigan Court of Appeals denied leave to appeal on the ground that Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Smith*, No. 254723 (Mich. Ct. App. Sept. 2, 2004). On May 31, 2005, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Smith*, 472 Mich. 915; 696 N.W.2d 721 (2005) (table).

Petitioner filed his habeas corpus petition on June 20, 2005. The grounds for relief are:

I.     Defense counsel was constitutionally ineffective and denied defendant Michael Smith due process rights to a fair trial.

     A.     Because counsel failed to object to the prosecutor's improper leading question during trial and in closing argument where he improperly bolstered his case, vouching for the credibility of their key witness, and where the prosecutor argued facts not in evidence.

     B.     Mr. Smith was denied effective assistance of counsel because counsel failed to obtain routine discovery or to have defendant's pretrial motion to suppress prior convictions under MRE 609 heard in a timely manner; and where even though defendant did not testify, counsel informed the jury that defendant really did not have much of a defense.

     C.     Mr. Smith's state and federal rights to the assistance

of counsel were violated where trial counsel failed to investigate, prepare and present a substantial defense, and by not presenting any defense, particularly not having Defendant Smith testify. Mr. Smith must be granted a new trial.

    D.      To the extent that counsel failed to sufficiently present or preserve the issues presented in arguments IA, IB, IC for review, Mr. Smith was denied the effective assistance of trial counsel.

II.      Mr. Smith is entitled to resentencing where defense counsel provided ineffective assistance of counsel at sentencing, in violation of the state and federal constitutional right to counsel.

III.     Defendant was deprived of his constitutional right to due process and to confront witnesses against him when the prosecution failed to disclose routine discovery that had been requested by defense counsel and when the prosecutor asked improper leading questions during trial and in closing argument where he improperly bolstered his case, vouching for the credibility of their key witness and where the prosecutor argued facts not in evidence.

IV.     Mr. Smith was deprived of due process, his right to appeal and to the effective assistance of counsel on appeal and this Court should treat this case as an appeal of right, or in the alternative, Mr. Smith has shown "good cause" as required by MCR 6.508(D)(3)(A) for failure to allege the presently raised grounds for relief on direct appeal.

Respondent argues in an answer to the habeas petition that Petitioner's claims are barred from review by his procedural default and his failure to exhaust state remedies for all his claims.

The Court will address the substantive merits of Petitioner's claims, because it is more efficient to adjudicate the merits of the claims than to analyze whether the claims are exhausted or procedurally defaulted. This approach is possible, because neither exhaustion, nor procedural default, are jurisdictional bars to substantive review of Petitioner's claims. *White v. Mitchell*, 431

F.3d 517, 526 (6th Cir. 2005), *cert. denied sub nom Houk v. White*, __ U.S. __, 127 S. Ct. 578

(2006), *and cert. denied sub nom White v. Houk*, __ U.S. __, 127 S. Ct. 581 (2006); *Howard v.*

*Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006).

## II.     Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's

adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision

is an "unreasonable application of" clearly established federal law "if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id*. at 413.

Most of Petitioner's claims were raised in his motion for relief from judgment, which the

trial court denied without any reference to federal law, except to say that it found no basis for

concluding that Petitioner's constitutional rights were violated. The State's appellate courts also

failed to adjudicate Petitioner's constitutional claims. When a state court fails to articulate a basis in federal law for rejecting a prisoner's federal claims, "deference is owed only to the result reached by the [state court], and not its reasoning, and this court must conduct an independent review of the record and the law to determine whether the state court's ruling comports with the requirements of § 2254(d)." *Stewart v. Erwin*, __ F.3d __, __, No. 05-4635, 2007 WL 2915093, at *9 (6th Cir. Oct. 9, 2007) (quotation marks and end citations omitted).

### III. Discussion

### A. Prosecutorial Misconduct

### 1. Failure to Disclose

Petitioner alleges that the prosecutor withheld discovery before trial. The discovery items in dispute are the pants that Petitioner was wearing on the night of the robbery and videotapes from the gas station that was robbed. According to Petitioner, the videotapes would have shown whether he was armed and the clothing (a belt and a pair of black shorts worn under blue jeans) might have convinced Tracie Milkey that it was Petitioner's belt or black shorts she saw at his waistline, and not a gun.

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The United States Court of Appeals for the Sixth Circuit recently explained that

> [t]he duty to disclose *Brady* evidence encompasses impeachment evidence as well
> as exculpatory evidence. [*United States v.*] *Bagley,* 473 U.S. [667] at 676, 105 S.Ct.
> 3375 [1985]; *Norris v. Schotten,* 146 F.3d 314, 334 (6th Cir.1998). We explained

in *United States v. Bencs,* 28 F.3d 555, 560 (6th Cir. 1994), that "[m]ateriality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." *Id.* (citing *United States v. Agurs,* 427 U.S. 97, 112 n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). In particular, "[e]vidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Phillip,* 948 F.2d 241, 249 (6th Cir. 1991) (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)). Further, reversal is not always warranted when a *Brady* violation occurs: "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to complete failure to disclose." *Bencs,* 28 F.3d at 560. "Delay . . . violates *Brady* [only] when the delay itself causes prejudice." *United States v. Patrick,* 965 F.2d 1390, 1400 (6th Cir. 1992). In sum, there are three components to a *Brady* violation, all of which [the petitioner] must establish to succeed on habeas review: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

*O'Hara v. Brigano*, __ F.3d __, __ , No. 06-3455, 2007 WL 2372259, *9 (6th Cir. Aug. 21, 2007).

There were no exculpatory videotapes of the robbery, because the video cameras at the gas station were not working on the night of the robbery. (Tr. Dec. 11, 2000, at 115.) Furthermore, it is highly unlikely that Ms. Milkey would have testified that she mistook Petitioner's clothing for a gun if she had seen Petitioner's pants and belt. Even if the belt and black shorts were the same color as the gun and added bulk to Petitioner's waistline, clothing and guns are dissimilar in texture and shape, and Milkey was certain that she saw the handle of a gun sticking out of Petitioner's pants. Therefore, "the allegedly withheld evidence . . . does not 'undermine confidence in the verdict because there is [not] a reasonable probability that there would have been a different result had the evidence been disclosed.' " *Cone v. Bell*, 492 F.3d 743, 757 (6th Cir. 2007) (quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998)). The state court's conclusory opinion that no constitutional violation occurred was objectively reasonable and did not result in a decision that was contrary to,

or an unreasonable application of, *Brady* and its progeny.

## 2.      The Prosecutor's Remarks

Petitioner alleges next that the prosecutor asked improper leading questions, vouched for the credibility of Tracie Milkey, argued facts not in evidence, and made a misstatement of fact. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied*, 544 U.S. 921 (2005). To prevail on his prosecutorial-misconduct claim, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 1376 (2007), and " 'so egregious as to render the entire trial fundamentally unfair.' " *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

### a.      Vouching for Witnesses

Petitioner contends that the prosecutor improperly bolstered his case by vouching for the credibility of Tracie Milkey, the key prosecution witness. According to Petitioner, the prosecutor attempted to bolster Ms. Milkey's credibility by repeatedly stating that Milkey was convinced she saw a gun (Tr. Dec. 14, 2000, at 56, 69, 71, & 75) and by going beyond the scope of redirect examination and asking whether there was any doubt in Milkey's mind that Petitioner possessed a gun during the robbery (Tr., Dec. 11, 2000, at 169).

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness. *See, e.g.*, *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993); *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992). Generally, improper vouching involves either blunt comments, *see, e.g.*, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (stating that improper vouching occurred when prosecutor asserted own belief in witness's credibility through comments including "I think he [the witness] was candid. I think he is honest."), or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony, *see, e.g.*, [*United States v.*]*Carroll,* 26 F.3d [1380, 1388 (6th Cir. 1994)] (stating that improper vouching occurred when prosecutor argued that the witness testifying under a plea agreement was in jeopardy if the court or government did not find the testimony truthful).

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

The prosecutor did not say that Milkey was credible, that he believed her, or that he was privy to some information known only to the prosecution. He merely emphasized Milkey's testimony. The remarks did not amount to improper vouching or bolstering of a witness.

### b.    Leading questions

Petitioner objects to the prosecutor's questions about the robber's tone of voice and whether Ms. Milkey could see the form of a gun below the robber's waistline. The prosecutor also said,

> It's been suggested, Miss Milkey, that something about what was going on that night may have distracted you and may have caused you to think you saw a gun when there may not have been a gun. Is there any question in your mind that the Defendant had a handgun?

(Tr. Dec. 11, 2000, at 135-36.) Petitioner contends that these inquiries were improper leading questions.

Although leading questions are not *per se* improper in Michigan, they "should not be used on the direct examination of a witness except as may be necessary to develop the witness'

testimony." Michigan Rule of Evidence 611(c)(1).  The alleged violation of state law is not a basis for habeas relief, *Lewis v. Jeffers*, 497 U.S. 765, 780 (1990), and the disputed questions were not fundamentally unfair and or misleading.  Furthermore, defense counsel had ample opportunity to cross-examine Milkey regarding her observations on the night of the robbery.  Any error in asking leading questions could not have had a "substantial and injurious effect or influence " on the jury's verdict and was harmless.  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

### c.     Facts not in Evidence

In his closing argument, the prosecutor stated that Petitioner drove up to the gas station in such a way that his car could not be seen.  (Tr. Dec. 14, 2000, at 47.)  He also stated that Ms. Milkey saw the entire handle of a silver handgun and had her wits about her (*id*. at 48 and 73) and that she was familiar with guns and had handled them in the past (*id*. at 49).  Petitioner contends that there was no evidence supporting these remarks.

Prosecutors may not misrepresent evidence, *Hodge v. Hurley*, 426 F.3d 368, 380 (6th Cir. 2005) (citing *Darden*, 477 U.S. at 181-82), nor assert facts that were never admitted in evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000).  They may "argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir.), *cert. denied*, 546 U.S. 865 (2005).

Ms. Milkey testified that she did not see any cars pull up to the gas station and that she first saw Petitioner when he walked into the gas station.  (Tr. Dec. 11, 2000, at 126-27).  Although she claimed to be in shock during the incident, she also testified that her state of mind did not affect her memory.  (Tr. Dec. 11, 2000, at 146.)  An employee who arrived shortly after the robbery testified that Ms. Milkey was upset, but that she handled the incident well and was not hysterical.  (*Id*. at

114.)  As for the gun, Ms. Milkey testified that she saw the handle of a silver and black handgun (*id*. at 132, 163, and 168), and that she had handled a handgun in the past and was familiar with guns. (*Id*. at 152, 165-67.)  Contrary to Petitioner's allegations, the prosecutor's remarks were based on the evidence or on reasonable inferences from the testimony.

### d.    Misstatement

Petitioner alleges that the prosecutor made a material misstatement of fact when he informed the jury that he did not have to produce a gun or ballistics for a conviction and that an offense can be armed robbery even if there was no gun.  (Tr. Dec. 14, 2000, at 55-56.)  To establish armed robbery in Michigan, the prosecution must show that the robber was armed "with an article which . . . is either a dangerous weapon or is some article, harmless in itself, used or fashioned in a manner to induce the victim's reasonable belief that the article is a dangerous weapon."  *People v. Barkley*, 151 Mich. App. 234, 237; 390 N.W.2d 705, 707 (1986).  A robbery can be classified as an armed robbery even if it involved a feigned weapon, such as

> a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon together with threatening behavior and statements indicating the existence of a weapon.  The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one.

*People v. Jolly*, 442 Mich. 458, 469; 502 N.W.2d 177, 181-82 (1993) (footnotes omitted).

*Barkley* and *Jolly* indicate that an armed robbery can occur without an actual weapon. Furthermore, the prosecutor's explanation of armed robbery was consistent with the trial court's instruction on armed robbery,[1] and there was objective evidence that Petitioner actually possessed

---

[1]  The trial court instructed the jury that, to prove armed robbery, the prosecutor had to establish that, "the Defendant was armed with a weapon designed to be dangerous and capable of

a dangerous weapon.  The alleged misstatement of fact is not a basis for habeas relief.

### e.    Conclusion

The prosecutor's comments were proper and, even if they were deemed improper, the prosecutor's overall conduct was not flagrant.  Therefore, the state courts' conclusions -- that Petitioner's constitutional rights were not violated and that he did not establish entitlement to relief -- were objectively reasonable.

### B.    Trial Counsel

Petitioner asserts that his trial attorney was ineffective.  Specifically, Petitioner alleges that his attorney (1) failed to object to the prosecutor's improper remarks, (2) failed to obtain discovery or arrange to have the motion to suppress Petitioner's prior convictions heard in a timely manner, and (3) failed to investigate or present a substantial defense.

The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law' " for purposes of evaluating ineffective-assistance-of-counsel claims.  *Williams*, 529 U.S. at 391.  Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

Counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Id*. at 688.  A deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at

---

causing death or serious injury or with any other object used or fashioned in a manner to lead the person who was assaulted [to] reasonably believe it was a dangerous weapon . . . ."  (Tr. Dec. 14, 2000, at 84.)

694. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91.

### 1. Failure to Object to the Prosecutor's Conduct

Petitioner alleges that his trial attorney was ineffective for not objecting to the prosecutor's leading questions and the prosecutor's closing arguments. The Court concluded above that the prosecutor's conduct was not improper. Defense counsel was not ineffective for failing to raise a meritless objection. *Juan H v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005), *cert. denied*, 546 U.S. 1137 (2006).

### 2. Conceding Guilt

Petitioner faults his attorney for not presenting a substantial defense and for informing the jury during opening statements that Petitioner did not have much of a defense. The comment about not having a defense was a reference to the charges of fleeing and eluding a police officer and leaving the scene of an accident. (Tr. Dec. 11, 2000, at 107.) Petitioner ultimately pleaded guilty to those charges, and he has not asserted any defense to the charges. Nor is it likely that he could have asserted a viable defense to those charges. The pursuit was recorded on video cameras attached to the officers' cars. (*Id*.) It was reasonable for defense counsel to concede that Petitioner was guilty of the less serious offenses and to focus on the more serious armed robbery count.

Defense counsel also conceded an element of the armed robbery charge. He stated in his closing argument that Petitioner took money from Tracie Milkey. Defense counsel was not ineffective for conceding this point, because there was little doubt about the identity of the robber.

13

Petitioner fit the description given of the robber, and he was pursued by police officers shortly after the robbery. When apprehended, he was found to be in possession of slightly more money than the amount of money taken from the gas station. He also had an unopened pack of cigarettes like the one purchased by the robber. Ms. Milkey identified him in a line-up about two weeks later.

In light of the evidence summarized above and the fact that no gun was recovered or observed by the police, it was reasonable trial strategy to argue that Milkey could have been mistaken about the gun and that Petitioner was guilty of larceny from a person. "[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'" *Florida v. Nixon*, 543 U.S. 175, 192 (2004) (quoting *United States v. Cronic,* 466 U.S. 648, 656 n. 19 (1984)).

### 3. Failure to Obtain Discovery or Timely Argue the Motion to Suppress

Petitioner alleges that defense counsel failed to obtain routine discovery, including the clothes that Petitioner was wearing on the night of the robbery and videotapes from the gas station. There were no videotapes of the robbery, and it is highly unlikely that Petitioner's clothes would have convinced Ms. Milkey that she mistook the clothes for a gun. Therefore, the alleged failure to obtain discovery did not amount to ineffective assistance of counsel.

Petitioner claims that his attorney's failure to make a timely motion to suppress his prior convictions resulted in his inability to make an informed decision on whether to testify. The record, however, does not support the contention that defense counsel filed an untimely motion to suppress or was at fault for not ensuring that the motion was heard in a timely manner. The trial court stated that defense counsel extensively briefed the issue and that the matter was *not* given to the court at the last minute. Although the issue was argued on the first day of trial (Tr. Dec. 11, 2000, at 5-8),

the motion was submitted before trial (Tr. Jan. 2, 2001, at 20).  Furthermore, the trial court determined that the prior convictions fell within the time limits and were admissible under the court rules.  There is no basis for concluding that defense counsel's handling of the motion to suppress was deficient.

### 4.       Failure to Investigate or Present a Proper Defense

Petitioner contends that his trial attorney failed to investigate, prepare, and present a substantial defense and prevented Petitioner from testifying.  Specifically, Petitioner alleges that his attorney failed to:  attack the credibility of the complainant; produce the police officers who searched Petitioner and could have testified that Petitioner was wearing a belt and black shorts under his blue jeans; question police officers about whether they would have been able to see Petitioner throw a gun from the car they pursued; investigate the crime scene to determine whether the video cameras were actually inoperable and whether the counter could have obstructed Ms. Milkey's ability to observe a gun; adequately cross-examine witnesses; move for a mistrial when the prosecutor asked the complainant if the deputy's gun looked like the one used by Petitioner; and acquire Petitioner's medical records to show that Petitioner was taking psychotropic drugs.  In addition, Petitioner alleges that his attorney's performance was deficient because he insisted on a jury trial instead of a bench trial, prevented Petitioner from testifying, and failed to have Petitioner take a lie detector test on the issue of whether he had been armed.  The Court finds no merit in these allegations for the following reasons.

### a.       Credibility of Witnesses

Contrary to Petitioner's assertions, defense counsel did attack the credibility of the complainant.  He elicited testimony that her statement to the police was inaccurate in at least one

respect and that Petitioner did not announce a robbery, take a gun out of his pants, or point a gun at her. In addition, although Ms. Milkey claimed that there was no license plate on the back of the robber's car, defense counsel elicited testimony from police officers that the license plate was clearly visible on the back of the car. Defense counsel did a commendable job given the strength of the evidence against Petitioner.

### b. Search of Petitioner

Petitioner claims that his attorney should have produced the police officer who searched him. The prosecutor, however, produced the officer, and the officer testified that Petitioner was wearing two pairs of pants or a pair of short black pants under his jeans when he was arrested. (Tr. Dec. 14, 2000, at 15 and 22.) Although defense counsel did not ask the officer whether someone could have mistaken Petitioner's clothing for a weapon, it is not plausible that the complainant could have confused a belt or the waistband of a pair of black shorts for a gun. Thus, counsel's allegedly deficient performance did not prejudice the defense.

### c. What the Officers Could See

Petitioner alleges that his attorney should have questioned the police as to whether they would have been able to see him throw a gun from the car they pursued. The record indicates that defense counsel did ask similar questions of two officers. Officer Mark Stone testified on cross-examination by defense counsel that he did not see Petitioner fling anything from the vehicle that Petitioner was operating. (Tr. Dec. 14, 2000, at 23.) Officer Tom Orlowski also testified on cross-examination by defense counsel that he saw nothing come out of the vehicle and that the police never lost sight of Petitioner's vehicle. (*Id*. at 30.) Petitioner's allegation is belied by the record.

### d. Investigation of the Crime Scene

An investigation of the crime scene would have been futile, because a witness testified, and the prosecutor confirmed, that the video cameras were inoperable. (Tr. Dec. 11, 2000, at 115; Tr. Jan.2, 2001, at 22.) In addition, Ms. Milkey testified that the counter at the gas station did not obstruct her view of the gun sticking above Petitioner's waistband. (Tr. Dec. 11, 2000, at 131-32 and 134-35.) Finally, the prosecutor stated at sentencing that it would not have been possible to view the inside of the gas station, because the station was under construction "for quite some time" and was locked due to demolition of the interior. (Tr. Jan. 2, 2001, at 22.) Defense counsel was not ineffective for failing to investigate the crime scene.

### e.     An Officer's Gun

During re-direct examination of Ms. Milkey, the prosecutor requested an armed officer in the courtroom to stand. The prosecutor then attempted to elicit testimony concerning the portion of the deputy's gun that Milkey could see from the witness stand. Petitioner claims that his attorney should have moved for a mistrial on the basis of the prosecutor's conduct.

Defense counsel did object more than once when the prosecutor pursued that line of questioning. He was not ineffective for failing to seek a mistrial, because the trial court sustained his objection and stated in the jury's presence that the prosecutor's tactic was inappropriate. (Tr. Dec. 11, 2000, at 166-67).

### f.     Medical Records, Lie Detector Test, Jury Trial, and Advice not to Testify

Petitioner's medical records and alleged use of psychotropic drugs were not relevant to any of the issues at trial, and the results of a lie detector test would have been inadmissible. *People v. Rocha,* 110 Mich. App 1, 8; 312 NW2d 657 (1981). Choosing to have a jury trial instead of a bench trial was sound trial strategy, given the strength of the evidence against Petitioner. Defense counsel

might have reasoned that a jury would be more sympathetic and more inclined to find Petitioner guilty of a lesser-included offense than a seasoned trial judge. As for the contention that defense counsel should have permitted Petitioner to testify, he is presumed to have waived the right to testify, because he failed to alert the trial court that he wanted to testify or that he disagreed with his attorney's decision about whether he should testify. *United States v. Bass*, 460 F.3d 830, 839 (6th Cir. 2006), *cert. denied*, __ U.S. __, 127 S. Ct. 2959 (2007); *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

The Court concludes for all the foregoing reasons that defense counsel's performance was not deficient and that the alleged deficiencies did not prejudice the defense. Therefore, the state court's determination that Petitioner's constitutional rights were not violated did not result in a decision that was contrary to, or an unreasonable application of, *Strickland.*

### C.     Counsel's Assistance at the Sentencing

Petitioner alleges that his trial attorney provided ineffective assistance at sentencing by (1) failing to calculate the sentencing guidelines in advance of the sentence, (2) neglecting to advise the trial court about Petitioner's psychiatric condition, and (3) arriving late at the sentencing, thereby preventing Petitioner from reading the pre-sentence report.

### 1.     Failure to Calculate Sentencing Guidelines

Petitioner claims that his attorney did not bother to calculate the sentencing guidelines before sentencing and that he (Petitioner) discovered for the first time at sentencing that the sentencing guidelines range was ten and one-half to thirty-five years. He alleges that he would have accepted the prosecution's offer to plead guilty had he known that the guidelines were so high.

Petitioner informed the trial court at sentencing that he declined an offer to plead guilty in

exchange for a sentence at the low end of the guidelines because he was unwilling to plead guilty to armed robbery. (Tr. Jan. 2, 2001, at 23.) The record therefore belies Petitioner's claim that his lack of knowledge of the high sentencing guidelines was the reason for not accepting the prosecutor's plea offer.

### 2.      Failure to Inform

Petitioner alleges that his attorney failed to advise the trial court of his psychiatric condition, but Petitioner has not alleged the nature of his psychiatric condition. Nor did he mention a psychiatric condition when he addressed the trial court at sentencing. Instead, he stated that he was addicted to drugs, and he complained about his attorney's representation of him.

To his credit, defense counsel mentioned difficulties in Petitioner's life, and he argued in favor of a sentence at the low end of the guidelines because the robbery was not heinous, brutal, or threatening. (Tr. Jan. 2, 2001, at 11-12.) Petitioner has not shown that his attorney overlooked critical evidence in mitigation of sentence. The Court therefore concludes that defense counsel's performance was adequate and that his failure to mention an alleged psychiatric condition did not reflect unreasonable professional judgment. "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003).

### 3.      Pre-sentence Report

Petitioner alleges that he was prevented from reviewing the pre-sentence report by his attorney's tardiness at sentencing. Defense counsel corrected one error made by the prosecutor, and Petitioner has not alleged that there were any other inaccuracies in the report. Therefore, defense

counsel's performance at sentencing was not deficient.

### D. Appellate Counsel

Petitioner's fourth and final claim alleges ineffective assistance of appellate counsel. Petitioner contends that his attorney should have raised the issues presented in the habeas petition and also should have argued that the verdict was against the great weight of the evidence.

An appellate attorney need not raise every nonfrivolous argument on appeal if counsel decides as a matter of professional judgment not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Furthermore, the evidence against Petitioner was overwhelming, and none of Petitioner's habeas claims are "dead bang" winners. Therefore, appellate counsel's failure to raise the claims was not unreasonable and affords no basis for concluding that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. *McMeans v. Brigano*, 228 F.3d 674, 683 (6th Cir. 2000). Failing to raise a meritless claim does not amount to ineffective assistance of appellate counsel. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### IV. Conclusion

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to, or unreasonable applications of, Supreme Court precedent.

**ACCORDINGLY, IT IS HEREBY ORDERED AND** that Petitioner's application for a writ of habeas corpus [docket entry #1] is **DENIED**.

**IT IS FURTHER ORDERED** that, for the reasons stated above, a certificate of appealability is **DENIED**. Petitioner has not shown that reasonable jurists would find this Court's ruling debatable or wrong; Petitioner has not made a substantial showing of the denial of a

constitutional right and does not deserve encouragement to proceed further.  *See Slack v. McDaniel*,

529 U.S. 473, 484-85 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327, 336-37 (2003).

**SO ORDERED.**

Dated:   October 17, 2007                               s/Paul V. Gadola
                                                         HONORABLE PAUL V. GADOLA
                                                         UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   October 17, 2007   , I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system which will send notification of such filing
to the following:
    William C. Campbell;   John W. Groves; Sanford A. Schulman          , and I
hereby certify that I have mailed by United States Postal Service the paper to the
following non-ECF participants: _____.

                                      s/Ruth A. Brissaud
                                      Ruth A. Brissaud, Case Manager
                                      (810) 341-7845